UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. CLARKE, ) | Case No. 4:05CV1977 |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE PETER C. ECONOMUS |
| v. ) | Magistrate Judge George J. Limbert |
| ) | |
| UNITED STATES OF AMERICA, et al., ) | REPORT AND RECOMMENDATION |
| ) | OF MAGISTRATE JUDGE |
| Defendants. ) | |

The instant matter is before the undersigned on a motion for summary judgment filed by Defendant doctors Mohamed Azam ("Defendant Azam"), Ross Quinn ("Defendant Quinn") and John Manenti ("Defendant Manenti") and Defendant United States of America ("Defendant USA"). ECF Dkt. #38. For the following reasons, the undersigned recommends that the Court grant Defendants' motion for summary judgment**.** *Id*.

## I. FACTUAL BACKGROUND

Plaintiff alleges in his complaint that when he arrived at Cumberland Federal Correctional Institution ("FCI Cumberland") in 1997, he went to the medical unit complaining of sinus problems. ECF Dkt. #1 at 4-5. He complained that his left nostril was completely blocked and he could not breathe out of it. *Id*. at 5. Staff at FCI Cumberland prescribed nasal spray and sinus pills, but Plaintiff did not experience relief. *Id*. Plaintiff avers that he thereafter saw an ear, nose and throat specialist ("ENT doctor") twice in the next two years and the ENT doctor recommended surgery for removal of nasal polyps. *Id*. According to Plaintiff, and despite his diligent pursuit, FCI Cumberland waited a year or so until he had a CAT scan and MRI in 1999 which showed a tumor blocking the entire sinus on Plaintiff's left side. *Id*. Plaintiff complains that surgery was again delayed another year. *Id.*

1

Finally, on January 7, 2000, Plaintiff avers that he underwent his first surgery and the polyps were removed "after three years of suffering, complaining and battling with medical staff for treatment." ECF Dkt. #1 at 5. Plaintiff further complains that his surgeon informed him that the tumor needed to be removed soon or it could "turn to" cancer. *Id*. Plaintiff alleges that FCI Cumberland ignored this fact and transferred him to Elkton Federal Correctional Institution ("FCI Elkton"). *Id*. Plaintiff avers that he arrived at FCI Elkon on February 7, 2000 and did not have a follow-up from his surgery between transfers, despite representations from FCI Cumberland that his medical file would contain a notation that he needed a follow-up and evaluation within thirty days of his transfer. ECF Dkt. #1 at 5.

Plaintiff further complains that he started experiencing extreme pain and blocking in the left nostril again and he informed staff at FCI Elkton of his ordeal. ECF Dkt. #1 at 5. He contends that staff told him that FCI Cumberland had done that which it was supposed to do and he would be alright. *Id.* Plaintiff informed FCI Elkton staff that FCI Cumberland assured him that a note would be placed in his medical file that he needed an immediate follow-up upon arrival at FCI Elkton and his tumor needed to be removed as soon as possible. *Id.* Plaintiff avers that FCI Elkton merely prescribed him sinus pills and did nothing more. *Id.* at 6.

At FCI Elkton, Plaintiff alleges that from February 2000 he suffered from constant nose bleeds and pus leakage and was advised by medical staff to take his sinus pills and pack his nose with tissues day and night for drainage. ECF Dkt. #1 at 6. Plaintiff avers that he suffered humiliation and pain while packing his nose because staff and other prisoners made fun of him. *Id*. He asserts that his condition became worse and he diligently complained and on October 4, 2000, another ENT doctor evaluated him and ordered a CAT scan. *Id.* That scan revealed opacification of the left maxillary sinus, which he claims was caused by the tumor. *Id.* The ENT doctor recommended surgical removal of the tumor. *Id.*

According to Plaintiff, he asked FCI Elkton medical staff whether he would have surgery as recommended, and the staff informed him that the medical committee denied the

2

recommendation to have surgery. ECF Dkt. #1 at 6. Consequently, Plaintiff filed an administrative remedy based upon the November 15, 2000 denial of surgery. *Id*. Plaintiff alleges that he showed his bleeding and pus-filled nose to one of the medical personnel and she thought the medical committee had made a mistake, so she talked to a doctor to try to convince him to reopen Plaintiff's case, which eventually happened. *Id.* Plaintiff thereafter dismissed his administrative remedy and waited for surgery. *Id.*

Plaintiff continues that instead of surgery, he underwent another CAT scan on July 7, 2001, which he avers "showed the tumor had gotten worse and the specialist/radiologist recommended a direct visualization of the left maxillary sinus." ECF Dkt. #1 at 6. Plaintiff alleges that on November 14, 2001, the specialist recommended another sinus surgery and on January 30, 2002, Plaintiff underwent the surgery. *Id.* at 6-7. However, doctors at St. Elizabeth Hospital in Youngstown, Ohio had to abort the surgery prior to completion because Plaintiff began to lose large amounts of blood from a compromised nasal artery that was difficult to identify due to "anatomical distortion and residual tumor." ECF Dkt. #1, Exhibit 3, Medical Records, February 6, 2002 letter. Plaintiff's nose was packed with gauze and he was prescribed pain medication. *Id.*

On February 4, 2002, Plaintiff went to medical sick call complaining of loss of feeling in the left side of his face. ECF Dkt. #1 at 7. He was informed by Defendant Azam that the feeling would return, but according to Plaintiff, it has yet to return. *Id.*

Plaintiff then complained to the Warden and he was transferred to Federal Medical Center Rochester and was given a CAT scan on April 10, 2002. ECF Dkt. #1 at 7. He thereafter underwent a third surgery on January 27, 2003 at the Mayo Clinic and the nasal tumor was removed in its entirety. *Id.*

According to Plaintiff, the doctor who removed the tumor indicated that Plaintiff's medical file stated that St. Elizabeth Hospital had removed eighty percent of the tumor but the Mayo Clinic doctor did not believe it. ECF Dkt. #1 at 7. The doctor stated that there was no

3

way that eighty percent of the tumor had been removed due to the amount of bleeding during the instant surgery and the amount of tumor that was removed there. *Id.*

Plaintiff avers that he was thereafter returned to FCI Elkton and he inquired about follow-up care several times, but he received none. ECF Dkt. #1 at 7. Plaintiff complains that he began losing his eyesight in his left eye and his nose started to bleed. *Id.* He was given eyeglasses and told that the nosebleeds were normal. *Id.* at 7-8. Plaintiff filed an administrative remedy against staff and thereafter received a follow-up treatment. *Id.* at 8. According to Plaintiff, the ENT doctor who conducted the follow-up told him that he needed to have an "open face surgery and remove the bone in his face." *Id.* Plaintiff complains that he still suffers from loss of sight, loss of feeling in the left side of his face, headaches, and occasional nosebleeds. *Id.*

## II.   PROCEDURAL BACKGROUND

On August 11, 2005, Plaintiff filed a complaint asserting the following claims against these individuals in their official and personal capacities: Dr. Sandra Howard, the Clinical Director of FCI Cumberland and overseer of medical staff ("Defendant Howard"), alleging that she acted with reckless disregard, negligence and deliberate indifference in failing to direct her staff to provide Plaintiff with the proper medical attention and surgery (ECF Dkt. #1 at 8); Dr. Gary Reynolds, another doctor at FCI Cumberland ("Defendant Reynolds"), for reckless disregard, negligence and deliberate indifference in failing to properly examine, diagnose and administer or prescribe the correct treatment or transfer him to the proper medical facility for proper treatment (*Id.*); Defendant Azam, Hospital Administrator at FCI Elkton , for the same causes of action in failing to direct his staff to provide Plaintiff with proper medical attention and surgery (ECF Dkt. #1 at 8-9); Defendant Quinn, a medical doctor at FCI Elkton, for the same claims in failing to properly examine, diagnose, and administer or prescribe the correct treatment (ECF Dkt. #1 at 9); and Defendant Manenti, a medical doctor at FCI Elkton, for the same claims in failing to properly examine, diagnose and administer or prescribe the correct treatment (*Id.*). Plaintiff also sued the Federal Bureau of Prisons ("BOP") for reckless disregard, deliberate

-4-

indifference and negligence for violation of his civil rights. *Id.* He stated his complaint as one made pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (1971)("*Bivens*"), the Federal Tort Claims Act ("FTCA") and negligence. ECF Dkt. #1 at 1. Plaintiff seeks monetary damages, a declaratory judgment, and an injunction. *Id.*

On October 12, 2005, Judge Economus dismissed Plaintiff's complaint after he failed to comply with an Order requiring him to either pay the full filing fee or file a financial application and prisoner account statement to show that he could not afford the filing fee. ECF Dkt. #s 3-4. Plaintiff thereafter moved the Court to reconsider his case because he had fully complied with the Court's Order but evidently suffered mailing difficulties. On December 9, 2005, Judge Economus reopened Plaintiff's case. ECF Dkt. #8.

On January 20, 2006, the Court issued a Memorandum Opinion and Order *sua sponte* dismissing the *Bivens* claims against Drs. Howard and Reynolds due to Plaintiff's failure to show that he had exhausted his administrative remedies against these Defendants and his failure to comply with the two-year statute of limitations. ECF Dkt. #9. Thus, the Court ordered that the case proceed on the *Bivens* claims only against Defendants Azam, Quinn and Manenti, and proceed on the FTCA claims against all Defendants. *Id.*

On January 23, 2006, Judge Economus referred the instant case to the undersigned for general pretrial supervision, including the review of all motions. ECF Dkt. #10.

On August 18, 2006, Plaintiff filed a motion for the appointment of counsel, which was denied by the undersigned on October 20, 2006. ECF Dkt. #s 18, 27.

On September 14, 2006, Defendants Azam, Quinn, Manenti and BOP filed a notice of substitution of the parties, substituting Defendant USA in their steads because Plaintiff could not maintain a negligence or FTCA action against them personally while they were performing duties in their official capacities for the prison. ECF Dkt. #23 at 1-2.

On October 3, 2006, Defendant USA, Azam, Quinn and Manenti filed a motion to dismiss parts of Plaintiff's complaint, asserting that: Plaintiff could not maintain a *Bivens* claim against the BOP because it was a federal agency; Plaintiff could not maintain a *Bivens* claim

-5-

against Defendants Azam, Quinn, and Manenti in their official capacities as federal employees; Plaintiff could not sustain his request for a jury trial under the FTCA; and Plaintiff could not sustain a request for punitive damages. ECF Dkt. #26. Plaintiff filed a response to this motion. ECF Dkt. #28.

On October 31, 2006, Defendant USA filed an amended notice of substitution, which included substituting Defendant USA for Drs. Howard and Reynolds in addition to Drs. Azam, Quinn and Manenti. ECF Dkt. #29.

On November 13, 2006, the undersigned issued a Report and Recommendation on Defendants' partial motion to dismiss, recommending that the Court dismiss the *Bivens* claims against the BOP because it is a federal agency not subject to a *Bivens* action. ECF Dkt. #30. The undersigned further recommended that the Court dismiss the *Bivens* claims against Drs. Azam, Quinn and Manenti in their official capacities for the same reasons. ECF Dkt. #30. The undersigned additionally recommended that the Court substitute Defendant USA for Defendants Howard, Reynolds, Azam, Quinn and Manenti for the FTCA claims based upon the law. *Id.* at 6. The undersigned also recommended that the Court dismiss the FTCA claims against the BOP for lack of subject matter jurisdiction, strike Plaintiff's request for a jury trial under the FTCA, and strike Plaintiff's request for punitive damages. *Id.* at 6-7.

On December 8, 2006, the Court adopted the undersigned's Report and Recommendation, agreeing that the *Bivens* claims should be dismissed against the BOP and dismissing the BOP entirely from the complaint since no claims were left pending against it. ECF Dkt. #33 at 2. The Court also dismissed the *Bivens* claims against Defendants Azam, Quinn and Manenti in their official capacities and indicated that the *Bivens* claims should proceed against these Defendants in their personal capacities only. *Id.* at 2-3. The Court further granted in part the undersigned's Report and Recommendation to grant the amended notice of substitution, substituting Defendant USA for Defendants Azam, Ross and Manenti as to the FTCA claims only. *Id.* at 3. The Court also struck Plaintiff's jury trial request and punitive damages under the FTCA. *Id.*

-6-

While the Court did not explicitly explain the reason for granting the amended notice of substitution only in part, the Court's use of the exhaustion doctrine and statute of limitations bar, coupled with the conclusory part of its December 8, 2006 Memorandum Opinion and Order that "[t]he FTCA claims shall proceed against the United States of America only...", implies to the undersigned that the only claims pending against Defendants Howard and Reynolds are the negligence and the FTCA claims.  Further, the two Orders signify to the undersigned that Defendant USA has also been substituted for Defendants Howard and Reynolds in the FTCA claims.  *Id*.  The undersigned submits the instant Report and Recommendation based upon these presumptions.

On January 19, 2007, Plaintiff filed his second motion for the appointment of counsel. ECF Dkt. #35.

On January 26, 2007, Defendant USA, Azam, Quinn and Manenti filed the instant motion for summary judgment.  ECF Dkt. #38.  Plaintiff thereafter filed a response and Defendants have filed a reply.  ECF Dkt. #s 43, 44.

### III. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(C).  Summary judgment is proper when no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Under Rule 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  *Allen v. Wood*, 970 F.Supp. 824, 828 (E.D.Wash.1997)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp., v. Catrett*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)).  This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 323; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir. 1995).  The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment.  FED. R. CIV. P. 56(e).  The nonmoving party must present additional evidence beyond the pleadings.  *Id.*  The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party.  *Id.* at 249.  The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.*  If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment.  *Celotex*, 477 U.S. at 322.

**IV.  LAW AND ANALYSIS**

    **A.  FIRST AND FOURTH CAUSES OF ACTION – *BIVENS***

In his first and fourth causes of action, Plaintiff asserts that Defendants Howard, Reynolds, Azam, Quinn and Manenti violated his federal constitutional right to protection against cruel and unusual punishment by denying him adequate medical treatment and care while he was

in FCIs Cumberland and Elkton.  ECF Dkt. #1 at 10-11.  However, in its January 20, 2006 Memorandum of Opinion and Order, this Court dismissed Plaintiff's *Bivens* action against Defendants Howard and Reynolds due to his failure to show that he exhausted his administrative remedies as to these Defendants and the passing of the statute of limitations.  ECF Dkt. #9 at 4-5.  And on December 8, 2006, the Court adopted the undersigned's November 13, 2006 Report and Recommendation recommending dismissal with prejudice of the *Bivens* claims against Defendants Azam, Quinn and Manenti in their official capacities due to the inability to bring a *Bivens* action against federal officers acting within the official scope of their duties with the federal agency.  ECF Dkt. #s 33 at 2; ECF Dkt. #30 at 5-6.  Accordingly, Plaintiff's only *Bivens* claims remaining before the Court are those against Defendants Azam, Quinn and Manenti in their individual capacities.

      Before addressing the merits of the *Bivens* claims, however, the undersigned raises the issue of whether Plaintiff can proceed on his *Bivens* claims against Defendants Azam, Quinn and Manenti in their individual capacities in light of the fact that he also has FTCA claims against Defendant USA pending in the same case.  In *Navarrete v. Vanyur*, Judge Economus ruled that a federal prisoner could not maintain a *Bivens* claim against prison doctors because he also had a pending FTCA claim and the FTCA claim was the inmate's sole relief for injuries incurred due to the acts or omissions of medical personnel acting within the scope of their employment.  110 F.Supp.2d 605 (N.D. Ohio 2000).  Citing two Sixth Circuit Court of Appeals cases in support, Judge Economus held that "Congress has expressly made the FTCA an inmate's sole remedy for injuries received by Public Health Service Officers acting within the scope of their employment." *Id.* at 606, citing *Beverly v. Gluch*, No. 89-1915, 1990 WL 67888 *1 (6th Cir. 1990) and *Walls v. Holland*, No. 98-6506, 1999 WL 993765 (6th Cir. 1999).  He indicated that the prison doctors in the *Navarrete* case had filed declarations with the Court stating that they were Public Health Service Officers and were acting within the scope of their employment duties when they treated the complaining prisoner.  *Id.*  In the instant case, Defendants Azam, Quinn and Manenti declared in their answer to the complaint that they were Public Health Officers as employees of the BOP

acting in the scope of their employment and were therefore immune from suit. ECF Dkt. #14 at 2-3. This is similar to the situation in the *Navarrete* case and therefore perhaps dismissal of the *Bivens* actions against Defendants Azam, Quinn and Manenti is warranted.

However, in *Harris v. United States*, the Sixth Circuit held that a prisoner may bring both a *Bivens* action and a FTCA action to judgment, but once judgment is rendered, he must elect between remedies. 422 F.3d 322, 337 (6th Cir. 2005). The Court also held that while a prisoner may sue both the United States and the federal employees, a judgment against the United States acts as a complete bar to a judgment against the federal employees. Thus, questions arise as to whether, under *Navarrete* or *Harris*, Plaintiff can maintain simultaneous actions against the individual Defendants in the *Bivens* actions and against Defendant United States.

In any event, even if the Court rules that Plaintiff could proceed on both his *Bivens* and FTCA claims at this point, the undersigned recommends that the Court dismiss both causes of action. In order to sustain a claim under *Bivens*, a plaintiff must show that the named defendant performed the acts that resulted in a deprivation of a constitutional right. *Rizzo v. Goode,* 423 U.S. 362, 375-76, 96 S.Ct. 598 (1976); *Bivens,* 403 U.S. at 390 n.2; *Williams v. Mehra,* 135 F.3d 1105, 1114 (6th Cir.1998). *Bivens* liability is individual only and is based upon each defendant's own constitutional violations. *Trulock v. French,* 275 F.3d 391, 402 (4th Cir.2001).

Here, Plaintiff brings his *Bivens* claim pursuant to the Eighth Amendment. ECF Dkt. #1 at 10. The Eighth Amendment to the United States Constitution prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference requires that the official both know of and disregard an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In other words, Plaintiff must allege that the medical need at issue is "sufficiently serious" and allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk. *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001). Mere

negligence does not amount to deliberate indifference. *Estelle,* 429 U.S. at 104. Consequently, allegations amounting to medical malpractice or negligent treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *Id.* at 106. However, deliberate indifference can be satisfied by something less than acts or omissions for the purpose of causing harm. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

The undersigned recommends that the Court find that Plaintiff meets the objective component of deliberate indifference because he has shown that his condition was sufficiently serious. Plaintiff's nasal problems resulted in the removal of a nasal tumor and required numerous surgeries, one of which was stopped due to nearly uncontrollable bleeding, and another surgery has been recommended. ECF Dkt. #1 at 7-8; ECF Dkt. #1, Exhibit 3.

However, the undersigned recommends that the Court find that Plaintiff cannot meet the subjective component of the standard. The Court should reject Defendants' assertion that Plaintiff's *Bivens'* claim should be dismissed merely because he admitted that he always received medical care. ECF Dkt. #38. Just because Plaintiff received medical care does not mean that deliberate indifference does not exist. Rather, the Court should find that Plaintiff cannot meet the subjective component of deliberate indifference because he presents no evidence indicating that Defendants Azam, Quinn, Manenti each subjectively perceived facts inferring a substantial risk to Plaintiff, they each drew that inference and then disregarded that risk.

Plaintiff does not deny that he received medical treatment while at FCI Elkton. He underwent surgeries, had numerous examinations by ENT doctors and prison doctors, he underwent CAT scans and MRIs, and he was given pain medications and nasal sprays. ECF Dkt. #1 at 2-3, 5-8, 10. Instead, Plaintiff complains that the treatment that he received from 1997 onward was "largely ineffective. The defendants[sic] denial and prolonging to do anything to attemp[sic] to improve plaintiff's situation or reduce the risk sufficiently satisfied the prongs of deliberate indefference[sic] to his medical needs." ECF Dkt. #1 at 10.

The Court distinguishes between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. *See e.g., Westlake v. Lucas*, 537 F.2d 857, 860, n. 5 (6th Cir. 1976). In such cases,

> Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law. Of course, in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all.

*Id*. (internal citations omitted). A refusal to treat an inmate promptly where the urgency is self-evident can constitute deliberate indifference. *Scicluna v. Wells,* 345 F.3d 441, 446-47 (6th Cir.2003). However, a reasonable delay in providing care in the absence of such an exigency provides no basis for liability. *Estelle,* 429 U.S. at 104-05.

Here, all of Plaintiff's *Bivens* claims sound in negligence only, despite his use of the terms "reckless disregard" and "deliberate indifference." ECF Dkt. #1 at 8-9. Plaintiff indicates that each of the Defendants showed "reckless disregard" and "deliberate indifference", but he then states that each of them "failed" to act properly in some way, signifying claims that sound in negligence. Accordingly, the Court could grant Defendants' motion for summary judgment in favor of Defendants and dismiss Plaintiff's *Bivens* claims because Plaintiff has alleged only negligence causes of action.

However, even presuming that Plaintiff has adequately articulated *Bivens* claims against Defendants Azam, Quinn and Manenti, the Court should grant summary judgment in Defendants' favor on these claims. Plaintiff first asserts that Defendant Azam exhibited deliberate indifference "by failing to direct his staff to provide plaintiff with proper medical attention and surgery needed." ECF Dkt. #1 at 9, ¶20. He does not provide more detail as to Defendant Azam's actions or inactions in his complaint, except in three paragraphs. He also contends that Dr. Manenti acted deliberately indifferent when he failed to properly diagnose, examine, and administer the correct treatment for Plaintiff. ECF Dkt. #1 at 9, ¶22.

The undersigned notes that the respondeat superior doctrine "does not apply in *Bivens* lawsuits to impute liability onto supervisory personnel...unless it is shown 'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Kesterson v. Luttrell,* 172 F.3d 48(Table), No. 96-5623, 1998 WL 894843 (6th Cir. Dec. 15, 1998), unpublished, quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984)(citations omitted). Accordingly, in order to sustain his *Bivens* claim against Defendant Azam, Plaintiff must show that Defendant Azam either encouraged or directly participated in the alleged lack of medical care, or he encouraged or directly participated in the alleged inappropriate or delayed medical treatment.

Plaintiff avers that he informed Defendant Azam that the FCI Cumberland medical staff assured him that they would note in his medical file that he was "in dire need of a follow-up and that his tumor needed to be removed A.S.A.P. But to no avail, plaintiff was prescribed sinus pills and nothing more." *Id.* at 5-6, ¶12. The medical records reveal that Plaintiff met with a FCI-Elkton nurse upon arrival on February 7, 2000 and the nurse noted in the record that a medical follow-up needed to be scheduled due to post-nasal surgery. ECF Dkt. #44, Exhibit A at 56. The next notation in the medical records is dated February 18, 2000 where Plaintiff met with a physician for follow-up from his nasal surgery. *Id.* Plaintiff was advised that he should continue with the nasal sprays that he was taking and that he would be evaluated when his blood test results came back. *Id.* On March 16, 2000, Plaintiff underwent a physical examination. *Id.* at 55. And with regard to sinus medications, Plaintiff advised Dr. Quinn on August 14, 2000 that the nasal spray that he had been using was working because he could breathe better. *Id.* at 54. Thus, the urgency in immediately scheduling and performing another surgery was not evident at that time because Plaintiff himself had indicated that the nasal spray was working. Moreover, the medical records do not show that another surgery was needed immediately upon arrival at FCI Elkton. The records do show that a physician wrote "NEEDS SURGERY" and "tumor needs removed" in his 1999 notes that followed Plaintiff to FCI Elkton, but the physician did not indicate that surgery was immediately necessary. ECF Dkt. #41, Exhibits G. Thus, Plaintiff

-13-

cannot establish that any medical misconduct occurred, much less that Defendant Azam acted with deliberate indifference by failing to immediately schedule him for a follow-up appointment or surgery.  For these reasons, Plaintiff cannot establish that a genuine issue of material fact exists that Defendant Azam were deliberately indifferent to his medical needs.

For nearly identical reasons, the Court should find that Plaintiff cannot maintain his *Bivens* claim against Defendant Manenti.  Defendant alleges that Defendant Manenti exhibited deliberate indifference by failing "to properly examine, diagnose and administer or prescribe the correct treatment" for him.  ECF Dkt. #1 at 9, ¶22.  The only specific reference to Defendant Manenti in the complaint is in conjunction with the first reference to Defendant Azam.  Plaintiff avers that he told both Defendant Azam and Defendant Manenti upon his arrival at FCI Elkton that the FCI Cumberland medical staff assured him that his medical file would contain a notation that he was "in dire need of a follow-up and that his tumor needed to be removed A.S.A.P." *Id.* at 5-6, ¶12.  Plaintiff's averment continues: "But to no avail, plaintiff was prescribed sinus pills and nothing more." *Id.*  Yet, as outlined above, the medical records show that Plaintiff met with a FCI-Elkton nurse upon his February 7, 2000 arrival and the nurse noted that a medical follow-up with a physician was necessary due to post-nasal surgery.  ECF Dkt. #44, Exhibit A at 56.  A February 18, 2000 notation reveals that Plaintiff met with a physician for follow-up and he was advised to continue with the nasal sprays until blood tests came back. *Id.*  On March 16, 2000, Plaintiff was examined. *Id.* at 55.  And Plaintiff had advised Dr. Quinn on August 14, 2000 that the nasal spray that he had been using was working, thereby contradicting any urgency in immediately scheduling and performing another surgery. Moreover, the medical records themselves fail to show that another surgery was needed immediately upon arrival at FCI Elkton.  Although the words "NEEDS SURGERY" were written in large letters and "tumor needs removed" was also indicated, the physician writing these notes did not indicate that surgery was immediately necessary.  ECF Dkt. #41, Exhibits G.  Thus, Plaintiff cannot establish that Defendant Manenti acted with deliberate indifference as Plaintiff saw a nurse on his day of arrival at FCI Elkton and he did have a follow-up appointment with a physician.  Moreover,

Plaintiff cannot show that Defendant Manenti was aware of a serious risk and drew the inference or a serious risk in failing to immediately schedule him for another surgery when the FCI Cumberland notes did not state an urgency and Plaintiff had indicated to Dr. Quinn that the nasal spray was working.  For these reasons, Plaintiff cannot establish that a genuine issue of material fact exists that Defendant Manenti was deliberately indifferent to his medical needs.

Nor can Plaintiff raise a genuine issue of material fact regarding the deliberate indifference of Dr. Azam in his other references to the doctor.  The second reference to Dr. Azam appears in paragraph fourteen of the complaint where Plaintiff avers that Dr. Azam told him that the medical committee at Elkton had denied the recommendation of the ear, nose and throat doctor ("ENT doctor") who had recommended surgery.  ECF Dkt. #1 at 6.  However, Plaintiff does not suggest that the decision of the medical committee was in any way based upon a recommendation of Dr. Azam or that he was in any way otherwise connected to this decision.  Further, this reference does not elaborate on Plaintiff's claim against Dr. Azam that he failed to direct his staff to provide him with proper care and surgery.

Plaintiff's third reference to Defendant Azam appears in paragraph fifteen of his complaint where he states that on February 4, 2002, he told Dr. Azam that he had lost feeling in the left side of his face and Dr. Azam informed him that the feeling would return soon.  ECF Dkt. #1 at 7, ¶15.  Plaintiff avers that even as of the date of his complaint, the feeling in his face did not return.  *Id.*  Again, this assertion has nothing to do with Plaintiff's claim that he failed to direct his staff to provide him with proper care and surgery.  And the medical note from February 4, 2002 does not indicate that Plaintiff complained of numbness in his face.  ECF Dkt. #44, Exhibit A at 41.  It states that Plaintiff returned from his outside consultation and the packing was removed from his nose and he had a bloody nose on the way back to Elkton.  *Id.*  The notation further states that Dr. Manenti was consulted and a telephone conference was had with Dr. Pearlstein, the ENT who consulted with Plaintiff and recommended another surgery.  *Id.* at 41-42.  Moreover, Plaintiff does not allege, nor can he establish, that any delay in his ability to undergo another surgery resulted from the actions or inactions of Defendants Azam and Manenti.

The Sixth Circuit has held that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Kentucky,* 238 F.3d 739, 742 (6th Cir. 2001), quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir.1994).[1]  Plaintiff has presented no such evidence.

Since Plaintiff has not presented sufficient facts to raise a genuine issue of material fact that Defendants Azam and Manenti inferred substantial risk to the prisoner, that they drew the inference, and that they then disregarded that risk, the undersigned recommends that the Court grant summary judgment in favor of Defendants Azam and Manenti on Plaintiff's claim of deliberate indifference.  ECF Dkt. #38.

The undersigned further recommends that the Court find that Plaintiff has not met his reciprocal burden on summary judgment of showing that Dr. Quinn acted with deliberate indifference.  Plaintiff avers that Dr. Quinn acted deliberately indifferent by failing to properly examine, diagnose and administer the correct treatment for his condition.  ECF Dkt. #1 at 9, ¶21. However, he provides no further information relating to Dr. Quinn's action or inaction concerning his condition and he fails to raise a genuine issue of material fact that Dr. Quinn knew of the seriousness of his condition or that he delayed treating Plaintiff thereby causing him substantial harm.  In addition, Plaintiff has presented no verifying medical evidence in the record in order to establish the detrimental effect of any alleged delay in his medical treatment.

Accordingly, the undersigned recommends that the Court grant summary judgment in favor of Defendant Quinn on Plaintiff's *Bivens* claim against him.  ECF Dkt. #38.

For the above reasons, the undersigned recommends that the Court grant Defendants Azam, Manenti and Quinn's motion for summary judgment on Plaintiff's *Bivens* claims against them in their individual capacities and dismiss these claims with prejudice.  ECF Dkt. #38.

---

[1]  Although this holding has heretofore been applied in claims brought pursuant to 28 U.S.C. § 1983, the undersigned finds the holding equally applicable to *Bivens* actions since *Bivens* claims are the federal counterpart to § 1983 actions.  *See Vector Research,Inc. v. Howard and Howard Attorneys, P.C.*, 76 F.3d 692, 697 (6th Cir. 1996); *McSurely v. Hutchinson*, 823 F.2d 1002, 1005 (6th Cir. 1987).

**B**.     **SECOND AND FIFTH CAUSES OF ACTION—NEGLIGENCE AND FTCA**

Plaintiff also alleges claims of negligence and violation of the FTCA against all Defendants.  ECF Dkt. #1 at 10, ¶¶28, 31.  However, Judge Economus has also ruled that Defendant USA should be substituted for all of the Defendants on Plaintiff's negligence claims.  *See* ECF Dkt. #s 9, 33.  Thus, the undersigned proceeds on these claims as to Defendant USA only.  In addition, the undersigned notes that Plaintiff is alleging a separate negligence claim from his FTCA claim. ECF Dkt. #1 at 10, ¶¶28, 31.

The undersigned recommends that the Court grant summary judgment in favor of Defendant USA on Plaintiff's claims of both negligence and FTCA violation.  ECF Dkt. #38.  Under the FTCA, the United States can be held liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place [ *i.e.,* Ohio] where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  Accordingly, the alleged medical malpractice/negligence is alleged to have occurred at FCI Cumberland and FCI Elkton.  Thus, Maryland and Ohio law both apply.

Maryland law provides that a prima facie case establishing medical malpractice must (1) determine the applicable standard of care; (2) demonstrate that this standard has been breached; and (3) develop a causal relationship between the violation and the injury.  *Lawson v. U.S.*, 454 F.Supp.2d 373, 416 (D.Md.,2006), citing *Weimer v. Hetrick,* 309 Md. 536, 553, 525 A.2d 643, 651 (1987); *Waffen v. U.S. Dept. of Health & Human Servs.,* 799 F.2d 911, 915 (4th Cir.1986); *Muenstermann v. United States,* 787 F.Supp. 499, 510-14 (D.Md.1992).  In Maryland, "[t]he burden of proof in a malpractice case is on the plaintiff to show a lack of the requisite skill or care on the part of the physician and that such want of skill or care was a direct cause of the injury ... General rules of negligence apply to malpractice cases ... [and] [t]herefore, to constitute actionable negligence, there must be not only causal connection between the negligence complained of and the injury suffered ... but it must be the proximate cause." *Lawson*, 454 F.Supp.2d at 416, quoting *Reed v. Campagnolo,* 332 Md. 226, 232-33, 630 A.2d 1145, 1148 (1993)(internal citations omitted).  Doctors in Maryland owe a duty to use the care expected of a

-17-

reasonably competent practitioner of the same class and acting in the same or similar circumstances. *Lawson,* 454 F.Supp.2d at 416, citing *Figueiredo-Torres v. Nickel,* 321 Md. 642, 650, 584 A.2d 69, 73 (1991); *Shilkret,* 276 Md. at 200, 349 A.2d at 252.

Upon review, the undersigned recommends that the Court find that Plaintiff has not set forth evidence of a claim sufficient to survive the Defendant United States' motion for summary judgment. Plaintiff meets none of the elements necessary to show that he can establish a medical malpractice claim under Maryland law.  He fails to show the standard of care, that the standard was breached or that the doctors lacked the skill or care which directly caused his injury.  In his complaint, Plaintiff avers that Defendant Howard failed to "direct her staff to provide plaintiff with proper medical attention and surgery needed." ECF Dkt. #1 at 8, ¶18. As against Defendant Reynolds, Plaintiff contends that he "failed to properly examine, diagnose and administer or prescribe the correct treatment or transfer plaintiff to the proper medical facility for correct treatment." ECF Dkt. #1 at 8, ¶19.  Plaintiff fails to raise a genuine issue of material fact that medical malpractice occurred at FCI Cumberland.  The medical records that he attaches to his response to the motion for summary judgment indicate that the specialist that he saw on September 28, 1999 and November 23, 1999 noted that Plaintiff needed surgery to remove polyps in the left nasal cavity.  ECF Dkt. #41, Exhibit G.  Plaintiff himself admits that he underwent surgery to remove the polyps on January 7, 2000, less than two months after the ENT recommended. ECF Dkt. #1 at 5, ¶12.  While he avers that he had been complaining to medical personnel at FCI Cumberland since 1997 about his nasal problems, and the tumor in his nasal cavity had not been timely removed, Plaintiff fails to provide records showing the number of times that he went to the sick call between 1997 through late 1999, the alleged lack of treatment he received during that time, and the alleged inadequate treatment that occurred.  Plaintiff's deposition and the medical records before the undersigned do indicate that he received medical treatment at FCI Cumberland, including sinus spray with steroids, referrals to specialists and surgery to remove polyps.  ECF Dkt. #37 at 42-61, ECF Dkt. #41, Exhibit G.  Accordingly, the

undersigned recommends that the Court find that Plaintiff has failed to meet his reciprocal burden on summary judgment of establishing medical malpractice/negligence under Maryland law.

Ohio law provides that a plaintiff alleging medical malpractice or negligence must show, by a preponderance of the evidence, that the medical personnel "failed to adhere to the appropriate standard of care recognized by the relevant medical community and that such failure caused the plaintiff injury." *Shedden v. U.S.*, No. 03-4150, 101 Fed. Appx. 114, 116 (6th Cir. 2004), unpublished, citing *Bruni v. Tatsumi,* 46 Ohio St.2d 127, 346 N.E.2d 673, 677 (1976). In Ohio, "a medical malpractice plaintiff must present expert medical testimony as to the standard of care required of a physician*." Jewell v. Holzer Hosp. Found., Inc*., 899 F.2d 1507, 1510 (6th Cir. 1990), citing *Bruni*, 346 N.E. 2d 673.

Plaintiff's complaint and exhibits show that he received medical care at both FCI Cumberland and FCI Elkton, including examinations, evaluations, x-rays, referrals to ENTs, and surgery. Plaintiff did not allege or present any expert testimony that would show the standard of care or that the medical treatment that he received was below this standard. Nor did he allege or present expert testimony establishing that any alleged delay in treatment or surgery worsened his condition. *Id.* For these reasons, the undersigned recommends that the Court grant summary judgment in favor of Defendant USA and dismiss with prejudice Plaintiff's FTCA and common law medical negligence/malpractice claim against Defendant USA under Ohio law. ECF Dkt. #38.

### C. THIRD CAUSE OF ACTION

In the third cause of action in his complaint, Plaintiff merely states that "[t]he actions of the collective Defendant's[sic] herein violate promulgated regulations of the Department of Justice, Federal Bureau of Prisons and State law." ECF Dkt. #1 at 10, ¶29. Defendants do not address this claim in their motion for summary judgment, but Plaintiff provides somewhat more detail in his response to Defendants' motion for summary judgment when he states that Defendants' actions and alleged delay in treating him was "in complete violation of their own

rules and regulations. Policy Statement 6031-01 page 14 states in part that an inmate must be afforded a Community Standard of health care." ECF Dkt. #41 at 3, ¶1.

Plaintiff provides no further elaboration as to this cause of action. Without more detail, the undersigned can see no distinction between this claim and those alleging either deliberate indifference or medical negligence/malpractice. Accordingly, for the reasons stated above, the undersigned recommends that the Court dismiss this claim with prejudice.

### V. PLAINTIFF'S SECOND MOTION FOR THE APPOINTMENT OF COUNSEL (ECF DKT. #35)

Also pending before the Court is Plaintiff's second motion for the appointment of counsel in this case. ECF Dkt. #35. Should the Court choose to adopt the instant Report and Recommendation, this motion would become moot. Should the Court choose to rule to the contrary, the undersigned will review and address this motion thereafter.

### VI. RECOMMENDATION AND CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court grant Defendants' motion for summary judgment and dismiss Plaintiff's complaint with prejudice against Defendants Azam, Manenti and Quinn in their individual capacities and against Defendant USA. ECF Dkt. #38.

Date: March 29, 2007                    */s/George J. Limbert*
                                        George J. Limbert
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).